UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE CUSTOM COMPANIES, INC.<br>an Illinois corporation,<br><br>Plaintiff,<br><br>v.<br><br>AZERA, LLC, a Texas limited liability<br>Company, VAKIL MAMMADOV, an<br>Individual, ISD ENTERPRISES, LLC,<br>a Georgia Limited liability company d/b/a<br>ISD TRANSPORATION and<br>GRAMERCY INSURANCE COMPANY,<br>a Texas corporation,<br><br>Defendants. | No. 12 C 2590<br><br>Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Plaintiff in this case, The Custom Companies, Inc., entered into a ground-shipping contract with Defendant Azera LLC d/b/a Hun Logistics. The driver Defendant hired to transport Plaintiff's goods from California to Pennsylvania was involved in a roll-over vehicle accident about midway through the journey, resulting in losses exceeding $100,000. This action, for the value of Plaintiff's lost cargo, followed. Defendant Azera LLC d/b/a Hun Logistics is in default.

Plaintiff has now moved for summary judgment [58] against Defendant Vakil Mammadov, the sole member of Azera. Plaintiff asks the court to find Mr. Mammadov personally liable for its damages, arguing that Azera LLC forfeited its corporate existence (and accompanying liability protections) prior to the accident. For the reasons discussed below, the court grants Plaintiff's motion.

## BACKGROUND[1]

**I. Contract and Accident**

Plaintiff, The Custom Companies, Inc. ("Custom"), is an Illinois freight transportation corporation that has its principal place of business in Illinois. (*See* Pl. 56.1 Stat. of Mat. Facts, hereinafter "Pl. 56.1" [59], ¶ 1.) Azera LLC d/b/a Hun Logistics is a "common carrier in the business of receiving, shipping, transporting, and delivering goods" throughout the United States. (Def. Answer [14] to Pl. First Am Comp. [13], ¶ 3.) In August 2011, Custom and Hun Logistics agreed to a shipping deal: Custom would pay Hun to transport Custom's goods—a "collection of different shipments" valued at more than $100,000—from California to Pennsylvania. (Pl. 56.1 ¶ 7; Dep. of Jeffrey Guthman, Ex. 6 to Pl. 56.1 [59-6], 10:3–9.) On August 20, Custom delivered the goods, "in good condition and otherwise undamaged at the time of delivery," to a Hun agent in California. (Pl. 56.1 ¶¶ 9–10; *see* Pl. Resp. [72] to Def. 56.1 Stat. of Mat. Facts, hereinafter "Def. 56.1," ¶ 4.) Hun arranged for its affiliate, Defendant ISD Enterprises, LLC, a Georgia limited liability company d/b/a ISD Transportation ("ISD") and operating under Hun's contract carrier authority,[2] to move the goods. (Def. Answer to Pl. First Am Comp. ¶¶ 5–6, 13; First Am. Compl. ¶ 7.) On August 22, the driver hauling Custom's goods from California to Pennsylvania was involved in a non-fatal rollover accident near the Kansas-Oklahoma border, causing significant damage to the goods. (Pl. 56.1 ¶¶ 11, 14.) Mammadov admits that the driver's negligence caused the accident. (Pl. Resp. to Def. 56.1 ¶ 5.) After the accident, between October 2011 and June 2012, Custom submitted several claims to Hun for the damaged goods, but Hun refused to pay. (Pl. 56.1 ¶ 13.)

---

[1] The court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337(a), as this case is governed by the Carmack Amendment, 49 U.S.C. § 14706, and the amount in controversy exceeds $10,000.00, exclusive of interest and costs.

[2] ISD's articles of organization list Mammadov as a co-"organizer" for the business. (*See* ISD Articles of Organization, Ex. 10 to Mammadov Dep. [59-5], 106.) While ISD remains a defendant in this case, the present motion seeks summary judgment against Mammadov only. The parties have not explained whether Azera and ISD's business arrangement matters for the purposes of determining either parties' liability. In the record, the only contract Custom entered

Prior to entering the contract, on June 3, 2011, Hun had faxed to Custom a Certificate of Liability Insurance listing Defendant Gramercy Insurance Company ("Gramercy")[3] as Hun's insurer. (Def. Answer to Pl. First Am Comp. ¶ 16.) The Gramercy policy provided $100,000 worth of coverage to Hun for the period from September 28, 2010 through September 28, 2011. (*Id.*) The pending summary judgment motion does not involve Count III, which requests a declaratory judgment against Gramercy. That Count will be resolved at a later date, though the court notes that Gramercy was placed in receivership on December 4, 2012, so Custom's ability to recover any of its damages from Gramercy is uncertain. (*See* Gramercy Ins. Co. Receivership FAQ, http://www.gicreceivership.com/pdf/GramercyFAQrevised8-28-12.pdf (last visited July 21, 2015).)

## II. Defendant's Corporate Status

On December 10, 2008, Mammadov formed Azera LLC d/b/a Hun Logistics under Texas law. (*See* Pl. 56.1 ¶ 15; Certificate of Formation, Ex. 7 to Pl. 56.1 [59-7].) Mammadov is the sole member included in the company's Certificate of Formation, which lists both Azera's business address and Mammadov's home address in Arlington, Texas. (*Id.*) As of December 9, 2014, Mammadov lives in Smyrna, Georgia. (*See* Dep. of Mammadov, Ex. 5 to Pl. 56.1 [59-5], 8:11–21.) It is undisputed that Azera LLC ceased to be an active Texas company by the time the accident occurred: On November 19, 2010, the State of Texas terminated Azera's corporate existence for failure to pay annual registration fees; as of January 2015, the company had not been reinstated. (Forfeiture Notice, Ex. 9 to Pl. 56.1 [59-9]; Mammadov's Answers to Pl.'s First Set of Interrogatories, Ex. 10 to Pl. 56.1 [59-10], ¶ 10.)

---

into was signed with Azera, *not* ISD. (*See* Ex. A to First Am. Compl. at 8.) This suggests Azera is responsible for ISD's actions under general *respondeat superior* principles. In any event, ISD's liability will be determined at a later date, if necessary.
   [3] Gramercy is a commercial property, casualty and motor cargo insurance company incorporated under the laws of the State of Texas with its principal place of business in Norcross, Georgia. (Def. Answer to First Am. Compl. ¶ 8.)

The parties dispute whether Mammadov successfully converted Azera LLC d/b/a Hun Logistics from a Texas company to a Georgia one before the accident. On November 30, 2009, the State of Georgia granted Azera LLC a "Certificate of Authority" to transact business as a "foreign" limited liability company in the state. (Certificate of Authority, Ex. 8 to Pl. 56.1 [59-8].) Mammadov maintains, however, that he successfully converted the company's status to a Georgia "domestic" limited liability company before he signed the carrier contract with Custom. (Aff. of Vakil Mammadov, Def. Resp to Pl. Mem. in Supp. of Summ. Judg. [76], ¶ 3.) Attached as an exhibit to his response to Plaintiff's motion is a "Certificate of Conversion," date-stamped on November 10, 2010 by Georgia's Secretary of State. (*See* Ex. 2 to Aff. of Vakil Mammadov.)[4] In addition, Mammadov states that "[f]rom 2010 to 2013, Azera filed registrations with the Georgia Secretary of State indicating [he] was the Registered Agent for Azera, LLC." (Aff. of Vakil Mammadov ¶ 4.) Other exhibits he tendered appear to corroborate this fact: in 2010, Mammadov submitted his annual registration fee and identified Azera LLC's address as in Arlington Texas. (Ex. 3 to Aff. of Vakil Mammadov.) The annual registration documents for 2011 through 2013, on the other hand, list Azera LLC's business address as located in Georgia. (*Id.*)

It is not clear from these documents, however, whether Mammadov successfully effected a conversion of his company's state legal status. Custom has produced copies of Georgia Secretary of State's online records, for instance, that state that Azera LLC's status as a "domestic" limited liability company has been classified as "flawed/deficient" since November 8, 2010 (well before Custom and Azera entered into their contract in August 2011). (Georgia Sec'y of State Online Records, Ex. B. to Pl. Resp to Def. 56.1 ¶ 7 [72-2].) These online records

---

[4] Custom is correct that Mammadov did not submit his affidavit and exhibits in accordance with Local Rule 56.1. (*See* Pl. Reply in Favor of Summ. Judg. [71], 7.) And the court recognizes that even *pro se* litigants must comply, as a general matter, with the Local Rules. *See, e.g.*, *Greer v. Board of Educ. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001) (pro se plaintiff's failure to comply with Local Rule 56.1 renders moving party's statements of fact undisputed). Regardless, as it appears Custom has not been prejudiced by Mammadov's procedurally deficient submissions, the court will consider the materials in resolving this motion.

4

state elsewhere that the registration fees Azera LLC paid were in connection with the company's status as a "foreign" limited liability company. (*Id.*)  Azera LLC's status as a "foreign" limited liability company is currently classified, without further explanation, as "active/noncompliance." (*Id.*)

### III. Procedural History

Custom filed an amended complaint on June 12, 2012, against Azera LLC, Mammadov in his personal capacity, ISD, and Gramercy. (*See generally* First Am. Compl.)  The complaint asserts three counts against the defendants, all stemming from the August 2011 accident. (*See id.* at 4–7.)  Count I, against Azera and ISD, alleges violations of the Carmack Amendment, which governs liability of common carriers to shippers for damages resulting from interstate shipments. (*Id.* ¶ 28).  Count III seeks a declaratory judgment that Gramercy is required to provide coverage for Custom's damages related to the shipping accident. (*Id.* ¶ 46.)  Count II, the subject of the current motion for summary judgment [58], alleges that Defendant Mammadov is personally liable for Custom's damages under Texas law because Azera LLC forfeited its corporate status (and accompanying liability protections) before the accident took place. (*Id.* ¶¶ 33–34.)  Custom tallies its damages in the amount of $116,469.44, plus pre-judgment interest and costs. (*Id.* ¶¶ 35–36.)  On May 6, 2014, this court entered an Order of Default against Defendants Azera LLC, ISD, and Gramercy for failure to appear in this case. (*See* May 6, 2014 Order [45].)

## DISCUSSION

### I. Standard of Review

The court will grant a motion for summary judgment when "there is no genuine dispute as to any material fact" such that "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The court "construe[s] all facts and draw[s] reasonable inferences in the light most favorable to the nonmoving party." *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011).  The court will grant

summary judgment against a party that does not produce evidence that would allow a reasonable jury to find in its favor on a material question. *McGrath v. Gillis*, 44 F.3d 567, 569 (7th Cir. 1995). Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (internal quotation marks and citation omitted).

**II.     Carmack Amendment Claim**

The Carmack Amendment "created a nationally uniform rule of carrier liability concerning interstate shipments." *North Am. Van Lines v. Pinkerton Sec. Sys.*, 89 F.3d 452, 454 (7th Cir. 1996). The purpose of the Carmack Amendment is to "relieve cargo owners 'of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods.'" *Kawasaki Kisen Kaisha Ltd. v. Regal–Beloit Corp.*, 561 U.S. 97 (2010) (quoting *Reider v. Thompson*, 339 U.S. 113, 119 (1950)). Under the Act, a carrier of property in interstate commerce is liable for "the actual loss or injury to the property caused by" the carrier. 49 U.S.C. § 14706(a)(1).

To establish a *prima facie* Carmack Amendment claim, a shipper must demonstrate (1) delivery of the shipment to the carrier in good condition; (2) loss or damage to the shipment; and (3) the amount of damages. *REI Transport, Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 699 (7th Cir. 2008). Once a *prima facie* case is established, the carrier has the burden to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability. *Allied Tube & Conduit Corp. v. S. Pac. Transp. Co.*, 211 F.3d 367, 370–71 (7th Cir. 2000).[5]

---

[5] Those excepted causes, not implicated here, present some decidedly high bars: they include "acts of God, the public enemy, the act of the shipper himself, public authority, or the inherent vice or nature of the goods." *Allied Tube*, 211 F.3d at 369 n.2 (quoting *Missouri Pacific Railroad Co. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964)).

In this case, the parties agree that Custom "delivered goods into the possession and control of Azera and the goods were in good condition and otherwise undamaged at the time of delivery." (Pl. Resp. to Def. 56.1 ¶ 4.) The parties further agree that Hun failed to deliver the goods to their final destination because of the accident, and that the accident destroyed or otherwise damaged Custom's goods. (*See id.* ¶ 7; Answer to First Am. Compl. ¶ 32.) Custom alleges damages of $116,469.44 in its Amended Complaint, and while Mammadov has not admitted the amount of damages, he does not challenge Custom's calculations. (Answer to First Am. Compl. ¶ 22.) Custom, therefore, has established a prima facie case under the Carmack Amendment, and Mammadov, in admitting that his driver was negligent, effectively concedes that Azera is liable for Custom's damages. *See Allied Tube*, 211 F.3d at 370-71. For the purposes of this ruling, the court concludes that Azera LLC d/b/a Hun Logistics is liable to Custom for its damages stemming from the accident.

### III. Mammadov's Personal Liability

The thrust of Custom's claim against Mammadov is that, before the accident, Azera LLC d/b/a Hun Logistics (a) forfeited its corporate existence in Texas and was never reinstated, and (b) never successfully re-organized its corporate existence in Georgia. Therefore, Custom urges, Mammadov is personally liable for Custom's damages in this case. (Pl. Mem. in Supp. of Summ. Judg. at 1.)

Custom cites § 171.255(a) of the Texas Tax Code for support. That provision reads as follows:

> (a) If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived. The liability includes liability for any tax or penalty imposed by this chapter on the corporation that becomes due and payable after the date of the forfeiture.

Tex. Tax Code Ann. § 171.255. This statute applies to limited liability companies organized under the laws of Texas. *See Bruce v. Freeman Decorating Servs., Inc.*, No. 14-10-00611-CV,

2011 WL 3585619, *2 (Tex App. Aug. 11, 2011). If the statute applies here, Mammadov is subject to personal liability for Custom's damages, *see supra* Discussion, Part. II, because the following facts are not in dispute:

1. Mammadov formed Azera LLC d/b/a Hun Logistics under the laws of Texas on December 10, 2008. (*See* Certificate of Formation, Ex. 7 to Pl. 56.1.)

2. Mammadov is the sole member of Azera LLC. (*Id.*)

3. The company forfeited its corporate existence in Texas on November 19, 2010, by failing to pay its annual registration fees. (Forfeiture Notice, Ex. 9 to Pl. 56.1 [59-9]; Def. Answer to Pl. Interrogatories ¶ 10.)

4. Azera LLC, as of January 20, 2015, has not been reinstated as a corporate entity in Texas. (*Id.*)

Mammadov can escape personally liability under Texas law, though, if he successfully re-incorporated Azera LLC in Georgia. He claims he did (*see* Resp. to Pl. Mot. for Summ. Judg. [76], 2), but the facts are not in his favor. For one, Azera LLC's status as a Georgia "domestic" limited liability company, is currently "flawed/deficient," and has been since November 8, 2010—nearly a year before the accident giving rise to the damages in this case. (*Id.*) In fact, it is unclear whether the company has ever been in good standing as a "domestic" company organized under the laws of Georgia. Mammadov did file a Certificate of Conversion with Georgia's Secretary of State in an attempt to effect a change in his company's state corporate charter. (*See* Certificate of Conversion, Ex. 2 to Resp. to Pl. Mot. for Summ. Judg.) And the court recognizes that Azera LLC filed timely registrations with Georgia's Secretary of State from 2010 to 2013. But as Custom points out, Georgia Secretary of State's online records show that Mammadov filed those annual registrations in connection with Azera LLC's status as a "foreign," and *not* "domestic," limited liability company. (*See id.* (citing Ex. B [72-2].) Mammadov also received a "Certificate of Authority" from the State of Georgia on November 30, 2009, but again, this Certificate allowed Azera LLC to conduct business in Georgia as a "foreign" company only. (*See* Certificate of Authority, Ex. 8 to Pl. 56.1 [59-8].) The fact that Azera LLC's status was foreign is important because, under Georgia law, "[t]he laws of the jurisdiction under which a

foreign limited liability company is organized govern its organization and internal affairs and the liability of its managers, members, and other owners, regardless of whether the foreign limited liability company procured or should have procured a certificate of authority under this chapter." Ga. Code Ann. § 14-11-701. This provision potentially dooms Mammadov: under Texas law, as discussed above, Mammadov is personally liable for Custom's damages, because Azera LLC forfeited its corporate existence there, and Mammadov is the company's sole member.

Whether Mammadov can survive the motion turns, then, on Azera LLC's corporate status under Georgia law. Section 14-11-212 of the Georgia Code provides a "foreign limited liability company . . . may elect to become a limited liability company" by "delivering a certificate of conversion to the Secretary of State for filing." Ga. Code Ann. § 14-11-212(a)–(b). The requirements to effect a conversion are manifold, and the record does not reveal why Azera LLC's status was classified as "flawed/deficient" prior to, and since, November 8, 2010. This court does not review the Georgia regulators' decision, however. For our purposes, the salient point is that Mammadov never successfully incorporated Azera LLC as a "domestic" limited liability company in Georgia. Therefore, because Azera LLC at all times remained, at most, a "foreign" limited liability company in Georgia, Mammadov's company was subject to the laws of Texas. *See* Ga. Code Ann. § 14-11-701 ("The laws of the jurisdiction under which a foreign limited liability company is organized govern its organization and internal affairs and the liability of its managers, members, and other owners[.]") And under Texas law, because Azera LLC d/b/a Hun Logistics forfeited its corporate existence for failing to pay its registration fees nearly a year before it entered into its contract with Custom, § 171.255(a) of the Texas Tax Code mandates that Mammadov be personally liable for the company's debts. As there is no dispute that Azera is liable to Custom for the damages resulting from the accident, it follows that Mammadov is personally obligated to pay those damages to Custom.

**CONCLUSION**

For the reasons discussed above, Custom's motion for summary judgment [58] on Count II of its First Amended Complaint is granted. A further status conference will be set for August 4, 2015, at 9:00 a.m., at which time Plaintiff is invited to submit a proposed order of judgment against Defendants Azera and Mammadov.

ENTER:

*[signature: Rebecca R. Pallmeyer]*

Dated: July 21, 2015

REBECCA R. PALLMEYER
United States District Judge